1

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

| United States of America, | ) | |
|---|---|---|
| 9 | Plaintiff, | ) ) ) |  CR 10-02991-TUC-CKJ (JCG) |
| 10 | vs. | ) ) |  **REPORT &** **RECOMMENDATION** |
| 11 | | ) | |
| | Veronica Guadalupe Sandoval, | ) ) | |
| 12 | Defendant. | ) ) | |
| 13 | | ) | |

14          Pending before the Court is a Motion to Suppress Evidence filed by Defendant

15   Veronica Guadalupe Sandoval. (Doc. 17.)  On October 27, 2010, Defendant was indicted on

16   one count of possession with intent to distribute 100 kilograms or more of marijuana in

17   violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(vii).  Defendant asserts in her Motion

18   to Suppress that the government lacked reasonable suspicion to stop her vehicle in which the

19   marijuana was found.  The United States filed a Response to the Motion, asserting that the

20   government lawfully stopped Defendant's vehicle because it possessed reasonable suspicion

21   that Defendant's truck was discharging excessive emissions in violation of Arizona state law

22   and reasonable suspicion, based on a tip from an unidentified source, that the truck was being

23   used to transport marijuana. (Doc. 21.)  Defendant filed a Reply on April 10, 2011. (Doc.

24   24.)

25          This matter came before the Magistrate for a report and recommendation as a result

26   of a referral made on October 20, 2010, pursuant to LRCrim 5.1. (Doc. 3.)  This matter was

27   set for evidentiary hearing and evidence was heard on April 11, 2011.  Defendant was

28

1   present and represented by counsel.  This matter was submitted following oral argument at

2   the conclusion of the hearing and taken under advisement.

3         Having now considered the matter, the Magistrate Judge recommends that the District

4   Court, after its independent review, deny Defendant's Motion to Suppress Evidence.

5   **Evidence Presented at Suppression Hearing**

6         The government relied on the testimony of two witnesses in opposing the Defendant's

7   motion:  Frank Acevedo, a Special Agent with United States Immigration and Customs

8   Enforcement (ICE) and Tombstone Chief Marshal Billy Cloud. Agent Acevedo has worked

9   in law enforcement for 22 years, including employment with ICE, the Santa Cruz County

10  Sheriff's Department and the Nogales Police Department.  All of his law enforcement career

11  has been spent in the Nogales and Sonoita and Patagonia areas.

12        At the time of Defendant's arrest, Marshal Cloud was the interim chief of police for

13  the town of Patagonia.  Marshal Cloud also has significant prior law enforcement experience,

14  serving six years as a highway patrolman with the Arizona Department of Public Safety

15  (DPS) assigned to Cochise County, nine years as a DPS undercover detective, three years as

16  a DPS reserve detective and several years as an officer and sergeant with the Patagonia

17  Police Department.  Marshal Cloud estimated that he has conducted several thousand traffic

18  stops during the course of his law enforcement career, including stops for excessive smoke

19  emitting from a vehicle.

20        On October 15, 2010, Agent Acevedo received a tip that a blue Ford pickup truck

21  pulling a white two-horse trailer would be transporting drugs east on Highway 82 from

22  Nogales toward Patagonia.   Agent Acevedo described the person providing the tip as

23  someone he knew who was not an agency informant and was not receiving compensation for

24  providing information.[1]  Agent Acevedo also testified that, in his experience, Highway 82

25

26       [1] Defendant moved for production of the identity of Agent Acevedo's source of information
    pursuant to *Rovario v. United States,* 353 U.S. 53 (1957); the Magistrate denied the motion at the
27  hearing on the ground that Defendant had not met his burden of making an initial showing that the

28

1   is a known drug-smuggling route.  Highway 82 is approximately 15 miles from the United

2   States border with Mexico.

3        While traveling westbound on Highway 82, Agent Acevedo located a blue pickup

4   truck pulling a white two-horse trailer driving east on Highway 82.   Agent Acevedo

5   contacted Marshal Cloud and asked to meet with him.  Agent Acevedo met Marshal Cloud

6   at the rest stop where the blue pickup truck had parked.  He advised Marshal Cloud that

7   federal agents were following the truck and that it was suspected of containing narcotics.

8   Agent Acevedo asked Marshal Cloud to initiate a traffic stop of the vehicle, and Marshal

9   Cloud agreed to do so.

10       Agent Acevedo and Marshal Cloud observed Defendant exit the public restroom, enter

11  the truck and drive east on Highway 82.   As the vehicle pulled away, Agent Acevedo

12  observed a dark black cloud of smoke emitting from the vehicle's muffler.  Marshal Cloud

13  followed Defendant's vehicle first by driving along a road parallel to and one block south of

14  Highway 82, and at some later point, on Highway 82.   He followed the truck for

15  approximately three to four miles.  Marshal Cloud did not initially call in the license plate

16  because there was a vehicle between his car and the Defendant's truck and he could not read

17  the license plate. During the time that he followed, Marshal Cloud observed an "excessive"

18  amount of smoke coming from the pickup.  He described the smoke as consistent, black and

19  thick.  He see through it, but it was "very thick," "more than normal that's emitted from

20  vehicles."   Marshal Cloud described the weather conditions at the time he observed the

21  smoke as "clear."  According to Marshal Cloud, the vehicle emitted smoke the entire time

22  he was following it.  Marshal Cloud believed that Defendant's vehicle was in violation of

23

24

25

26

27  identity of the informant would be of particular assistance to the defense.

28

1   A.R.S. § 28-955, which prohibits the emission of excessive smoke from a vehicle.[2]  Based

2   on the excessive smoke, Marshal Cloud initiated a stop of Defendant's vehicle.

3         Marshal Cloud asked Defendant for her driver's license, proof of insurance and

4   vehicle registration.  Defendant could not find the vehicle registration.  Defendant provided

5   her driver's license and an out-of-date insurance card; the insurance was not in her name.

6   When Marshal Cloud ran her vehicle's tags, they did not come back to her name.  Marshal

7   Cloud advised Defendant that he was going to return to his car and issue her a repair order

8   or warning for excessive smoke, to which Defendant replied, "It's a diesel."  Marshal Cloud

9   testified that the smoke emitting from Defendant's pickup was excessive even for a diesel

10  engine.

11        Marshal Cloud returned to his car to write-up the warning and confer with Agent

12  Acevedo, who had arrived on the scene with several other agents. Agent Acevedo asked

13  Marshal Cloud to ask Defendant whether she would consent to a search of her vehicle.

14  Marshal Cloud returned to Defendant's vehicle where Defendant had been unable to locate

15  her vehicle registration. Marshal Cloud added a failure to provide registration warning to

16  Defendant's paperwork. After Marshal Cloud finished writing Defendant's repair order, he

17  requested permission to search her vehicle.  Marshal Cloud testified that he does not ask for

18  consent until after the citation is written to ensure that the violator feels feel to leave.[3]

19  Defendant consented to Marshal Cloud's request to search and he escorted her from her

20

21         [2] A.R.S. § 28-955 states "The engine and power mechanism of a motor vehicle shall be
22  equipped and adjusted to prevent the escape of excessive fumes or smoke." Arizona Administrative
    Code Section R-18-2-1030(B) defines excessive smoke caused by diesel vehicles; for a vehicle
23  traveling at a location above 4,000 feet (the altitude of Patagonia, *see* TR 55-56) emissions cannot
    exceed forty percent visual opacity for 10 seconds.

24

25         [3]Marshal Cloud first testified on direct examination that he handed the repair order to
    Defendant while she was waiting in the vehicle, she signed the order and he gave it to her.  When
26  shown a copy of the order which bore the notation "in custody" in the signature block, Marshal
    Cloud stated that he must have been mistaken in his earlier testimony.  He believes that he prepared
27  the order when he was at his vehicle, but does not remember the time he gave it to her.  He later
    clarified that at the scene, he gave the repair order to Agent Acevedo, who then provided it to
28  Defendant after her arrest.

1   vehicle toward the back of the trailer, advising her that she could withdraw her consent to

2   search at any time.  When they reached the back of the trailer, Marshal Cloud reported to

3   Agent Acevedo and the other agents positioned behind Defendant's truck that Defendant had

4   consented to a search of the vehicle and trailer.

5          Agent Acevedo took the Defendant aside and asked her what she was doing in the

6   area.  Defendant stated that she was headed to an auction at the Sonoita Fairgrounds.  Agent

7   Acevedo, who was familiar with the fairgrounds from his law enforcement and personal

8   experience, told Defendant that he did not believe there was an auction at the fairgrounds on

9   that date.  Defendant then told Agent Acevedo that she was headed to a roping at the Lorta

10  family residence.   Agent Acevedo was familiar with the Lorta family and knew that

11  Defendant had passed the Lorta residence by ten miles.

12         Agent Acevedo asked Defendant if she knew whether the trailer contained any illegal

13  narcotics.  Defendant stated that she did not know.  Agent Acevedo asked Defendant if she

14  would consent to search the truck and trailer, which she did. By this time, a K9 dog at the

15  scene had run the outside of the trailer and alerted to its front end.  When agents opened the

16  trailer, they discovered a horse with a severe injury to its left rear leg; according to Agent

17  Acevedo the horse "shot out" of the trailer. Agent Acevedo then noticed that the feeder stall

18  area of the trailer was unusually large, that it had been extended out, and that the top of the

19  feeder stall was covered with a fresh layer of "bondo."  Agents lifted the top of the feeder

20  stall and discovered several bundles of marijuana underneath.

21         At the hearing, the Defendant called Investigator Anabel Santa Maria who testified

22  that she had viewed Defendant's pickup truck at a federal agency facility after Defendant's

23  arrest. Agent Acevedo was present during the viewing; he started the truck and revved the

24  engine. Ms. Santa Maria and another investigator took a video of the vehicle while it was

25  running; the video was admitted into evidence during the hearing.  The video depicts

26  emissions from the truck at variable intervals.  Ms. Santa Maria testified that she did not

27  know whether the exhaust emissions she observed coming from Defendant's vehicle on the

28  day of the filming were similar to those observed by Marshal Cloud on the date of

1  Defendant's arrest.  She did not know if the emissions would differ if the engine were hot as

2  opposed to cold or whether the emissions would be different because it was the first time the

3  truck had been turned on for awhile.  She also acknowledged that video can make the thing

4  filmed seem more translucent than it really is.  No special filters were employed to prevent

5  this phenomenon.

6        Ms. Santa Maria also testified regarding the weather on October 15, 2010.  She

7  testified that according to a local news website, the weather in Southern Arizona on that date

8  was cloudy with thunderstorms, with temperatures ranging from 57 to 84 degrees.  Ms. Santa

9  Maria acknowledged that she did not know if the weather information listed on the website

10  was a forecast or historical information and that the information was not specifically for

11  Nogales or Patagonia, but rather for the southern Arizona region.

## ANALYSIS

13        Defendant moves for suppression of the evidence, arguing: (1) Marshal Cloud stopped

14  the Defendant's vehicle without reasonable suspicion, in violation of her Fourth Amendment

15  rights, and (2) the search of her vehicle violated her Fourth Amendment rights because (a)

16  the search was tainted by the illegal stop, (b) Defendant's consent to the search was obtained

17  through misrepresentations, and (c) Defendant's consent did not extend to Agent Acevedo.

18  **1.     The stop of Defendant's vehicle was based on reasonable suspicion**

19        The Fourth Amendment prohibits "unreasonable searches and seizures" by the

20  Government, and its protections extend to brief investigatory stops that fall short of

21  traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968). The Fourth Amendment's

22  prohibition against unreasonable searches and seizures applies to investigatory traffic stops.

23  *United States v. Arivzu*, 534 U.S. 266, 273 (2002).  To justify an investigative stop, a police

24  officer must have reasonable suspicion that a suspect is involved in criminal activity. *United*

25  *States v. Miranda-Guerena*, 445 F.2d 1233, 1236 (9th Cir. 2006).  If an officer reasonably

26  suspects that a traffic violation has occurred, an investigatory stop is reasonable. *Id*.

27        In making a reasonable suspicion determination, the Court looks to the totality of the

28  circumstances to evaluate whether the detaining officers have a "particularized and objective

- 6 -

1  basis" for suspecting legal wrongdoing.  *Arvizu,* 534 U.S. at 273.  Officers' reasonable

2  suspicion may be informed by the officers' own experience and specialized training; officers

3  may make inferences from and deductions about the cumulative information available to

4  them that "might well elude an untrained person."  *Id.*  "Any number of factors may be taken

5  into account in deciding whether there is reasonable suspicion to stop a car in the border

6  area."  *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).  "Officers may

7  consider the characteristics of the area in which they encounter a vehicle.  Its proximity to

8  the border, the usual patterns of traffic on the particular road, and previous experience with

9  alien traffic are all relevant."  *Id.* at 884-885 (citations omitted). "Aspects of the vehicle itself

10 may justify suspicion."  *Id.*  In evaluating an investigatory stop for a traffic violation, the

11 facts must be sufficient to lead an officer to reasonably believe that there was a traffic

12 violation.  *Miranda-Guerena*, 445 F.3d at 1236.  The constitutional reasonableness of a

13 traffic stop does not depend on the actual motivations of the officers involved.  *Whren v.*

14 *United States*, 517 U.S. 806, 814 (1996).

15      In the present case, Defendant contends that Marshal Cloud lacked reasonable

16 suspicion to stop Defendant's vehicle for violation of emissions requirements.  First,

17 Defendant contends that Marshal Cloud could not have reasonably believed that Defendant's

18 vehicle was subject to emissions testing and that his stop was based on a mistaken belief of

19 the Arizona Vehicle Code.  According to Defendant, the State of Arizona exempts most

20 vehicles registered outside Pima and Maricopa County from complying with vehicle

21 emissions based on the residence zip code.  Defendant concludes that because the truck

22 Defendant was driving was registered in Rio Rico, it was exempt from compliance with the

23 state emission standards.[4]

24

25      [4] Although Defendant argued the legal requirements for emissions testing, she did not cite
26 to the statute or case authority in support.  According to the Court's research, A.R.S § 49-542
   requires emissions inspection in "Areas A and B" which are defined in A.R.S § 49-541 as portions
27 of Pinal, Yavapai, Maricopa and Pima counties. The Arizona Department of Environmental Quality
   has construed these statutory provisions; the provisions permit drivers to apply for a waiver for a
28 vehicle registered outside of Areas A and B by filing a "Status Code 52" form with the DMV based

1    Marshal Cloud did not rely on a mistaken belief of Arizona law as a basis for

2  stopping Defendant's vehicle.  Marshal Cloud testified that he stopped Defendant's vehicle

3  for excessive vehicle emissions, not because he believed she had not complied with

4  emissions testing requirements.  Marshal Cloud distinguished the regulations which govern

5  emissions testing from A.R.S. § 28-955, which prohibits the emission of excessive smoke

6  from a vehicle.  Marshal Cloud testified that, based on his experience as a law enforcement

7  officer, even vehicles which were not required to submit to emissions testing were still

8  required to comply with A.R.S. § 28-955.  (TR 19-20.)  Marshal Cloud stopped Defendant

9  because he believed she was in violation of A.R.S. § 28-955.

10    Defendant next argues that Marshal Cloud could not have reasonably believed that

11  Defendant's vehicle was emitting excessive smoke in violation of A.R.S. § 28-955.  Under

12  A.R.S. § 28-955, for a diesel-powered vehicle such as Defendant's, traveling at an elevation

13  in excess of 4,000 feet, smoke is excessive if it exceeds forty percent visual opacity for 10

14  seconds.  Marshal Cloud testified that the smoke he observed emitting from Defendant's

15  vehicle was "consistent, black and thick." He observed the smoke for approximately three

16  to four minutes in clear weather.[5]   He observed the smoke over the course of three to four

17  miles.  These facts were sufficient to lead Marshal Cloud to reasonably believe that there was

18  a traffic violation.[6]  Moreover, the facts were corroborated by Agent Acevedo who also

19

20  on their resident zip code.

21    [5] The on-line weather report on October 15, 2010, introduced by the Defendant, does not
22  undermine Marshal Cloud's testimony that the weather was clear and that he could clearly observe
   dark smoke consistently being emitted from the truck over a distance of 3 to 4 miles.  The on-line
23  weather report was not specifically for Patagonia. It was unknown whether the report was a weather
   forecast or a weather history. Moreover, the picture of the truck at the scene on the day of the arrest
24  shows a clear sky and dry pavement and supports Marshal Cloud's testimony that the weather was
   clear.  (See Exh. 110.)
25

26    [6] In concluding that Marshal Cloud had reasonable suspicion to stop the Defendant based on
   the truck's excessive emissions, the Magistrate discounts the testimony of and videotape prepared
27  by Ms. Santa Maria regarding the truck's emissions. Ms. Santa Maria conceded that at the time she
   videotaped the truck, it had not been driven in some time, that she did not know whether the
28  emissions she observed were similar to those observed by Marshal Cloud on the date of Defendant's

1  testified that he could see a dark/black cloud of smoke emitting from Defendant's muffler

2  and described the smoke as "hard to see through" as it exited the muffler.  (TR 65.)

3  Marshal Cloud also had an additional valid basis for stopping Defendant's vehicle; he

4  had reasonable suspicion that Defendant was transporting illegal drugs based on a tip from

5  an informant to Agent Acevedo.   An informant's tip can provide a basis for a finding of

6  reasonable suspicion if the tip is reliable.  *See United States v. Rowland*, 464 F.3d 899, 907-

7  08 (9th Cir. 2006).  Several factors bear on reliability.  A known informant's tip is more

8  reliable than an anonymous informant's tip.  *Id.*  An informant with a proven track record of

9  reliability is considered more reliable than an unproven informant.  *Id.*  An informant's tip

10  is considered more reliable if the informant reveals how the informant came to know the

11  information.  *Id.* Finally, a tip that provides detailed predictive information about future

12  events that is corroborated by police observation may be considered reliable.  *Id.*  Predictive

13  information that reveals a detailed knowledge of an individual's intimate affairs is more

14  reliable than predictive information that could be observed by the general public and is more

15  valuable if it relates to suspicious activities.  *Id.*

16  The Magistrate concludes that the tip received by Agent Acevedo  was reliable.

17  Agent Acevedo received a tip from a person known to him.  According to Agent Acevedo,

18  the source of information did not have any apparent motive to fabricate his/her report.  The

19  source was not an informant working for a law enforcement agency, had never lied to him

20  and was not receiving any compensation or deal for the information.  Agent Acevedo's

21  source of information reported that a blue Ford pickup truck hauling a white two-horse trailer

22  was transporting drugs and traveling eastbound on Highway 82.  Following that tip, Agent

23  Acevedo found and observed Defendant's vehicle, a blue Ford pick up truck with a white

24  two-horse trailer, confirming the information provided by the informant. Moreover, the truck

25

26

27  arrest, and that the videotaped emission could be more translucent than what Marshal Cloud
observed. The video is not a reliable re-enactment of the emissions of the vehicle on the date in

28  question.

1  was traveling eastbound on Highway 82, as the informant indicated it would be.  Notably,

2  Highway 82 is known for drug-smuggling.

3        Agent Acevedo requested Marshal Cloud's assistance in stopping the Defendant's

4  vehicle, even indicating that he had received a tip that the vehicle or trailer was being used

5  to transport drugs.  *See United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) (an

6  investigating officer's reasonable suspicion that a vehicle is transporting drugs can be

7  imputed to the officer who makes the traffic stop under the collective knowledge doctrine).

8  Given the totality of the circumstances, Agent Acevedo would have had reasonable suspicion

9  to conduct an investigatory stop of Defendant's vehicle to investigate.  *See Rowland*, 464

10 F.3d at  908 (affirming reasonable suspicion for stop where agents received a tip from a

11 credible source, the defendant matched the source's description and was traveling the route

12 predicted by the source).  Therefore, so did Marshal Cloud.

13 **2.     The search of Defendant's vehicle was lawful**

14       Defendant contends that the search of her vehicle was unlawful because (a) the search

15 was tainted by the illegal stop, (b) Defendant's consent to the search was obtained through

16 misrepresentations and (c) Defendant's consent did not extend to Agent Acevedo.

17       **a.     The search was not tainted by an illegal stop**

18       Because the Magistrate concludes that Marshal Cloud had reasonable suspicion to

19 stop Defendant's vehicle and that Agent Acevedo would have had reasonable suspicion to

20 stop the vehicle, the Magistrate rejects Defendant's assertion that the search was the fruit of

21 an illegal stop.

22       **b.     Defendant's consent was not obtained through misrepresentations**

23       "[A]ccess gained by a government agent, known to be such by the person with whom

24 the agent is dealing, violates the fourth amendment's bar against unreasonable searches and

25 seizures if such entry was acquired by affirmative or deliberate misrepresentation of the

26 nature of the government's investigation."  *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir.

27 1990) (citing *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984)).  In the present

28 case, there is no evidence to support Defendant's contention that Marshal Cloud misled

1   Defendant regarding the purpose and scope of the vehicle search.  In her Motion, Defendant

2   suggests that because Marshal Cloud stopped her regarding excessive emissions, she

3   reasonably believed that the search he requested related to that same matter.  Defendant

4   elicited very little testimony from Marshal Cloud regarding his request to search the vehicle

5   or Defendant's response to that request. Marshal Cloud testified that he asked Defendant for

6   consent to search the vehicle, asked her to step out of the vehicle and stay either with him or

7   in the area during the search in case she wanted to withdraw consent.  He testified that

8   Defendant gave her consent.  There is no evidence that Marshal Cloud misled Defendant into

9   believing that only Marshal Cloud would conduct the search or that the search would only

10   be related to the traffic violation.  There is no evidence that she believed that the search was

11   limited to emission matters.  In fact, the evidence suggests otherwise; Defendant had been

12   advised that she could withdraw her consent at anytime.  If she intended to give consent only

13   to Marshal Cloud, she could have withdrawn it when she saw the additional officers and

14   observed the search.

15   **c.    Defendant gave Agent Acevedo her consent to search**

16   Finally, there is no evidence to support Defendant's contention that the consent

17   granted was limited to Marshal Cloud.  As noted above, if Defendant did not intend to

18   consent to a search of the vehicles by Agent Acevedo or other agents, she could have

19   revoked her consent as  Marshal Cloud had informed her she could.  More importantly,

20   Agent Acevedo offered uncontradicted testimony that he obtained independent consent from

21   Defendant to search her vehicle for illegal drugs.

22   **RECOMMENDATION**

23   In view of the foregoing, it is recommended that, after its independent review of the

24   record, the District Court DENY Defendant's Motion to Suppress filed on March 18, 2011.

25

26

27

28

- 11 -

1    (Doc. 17.)  The parties have **fourteen (14) days** to serve and file written objections to the

2    Report and Recommendation.  The parties are advised that any objections should be filed

3    with the following caption: **CR 10-2991-TUC-CKJ.**

4        DATED this 19ᵗʰ day of May, 2011.

Jennifer C. Guerin
United States Magistrate Judge