IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-10-02991-TUC-CKJ (JCG) |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| VERONICA GUADALUPE SANDOVAL, | ) | |
| Defendant. | ) | |

On May 19, 2011, Magistrate Judge Jennifer C. Guerin issued a Report and Recommendation on Defendant's Motion to Suppress [Doc. 33] based on an alleged unlawful vehicle stop and lack of proper consent to the search. Magistrate Judge Guerin recommended that Defendant's Motion to Suppress [Doc. 17] be denied. On June 17, 2011, Defendant filed her Objection to Report and Recommendations [Doc. 39]. On July 13, 2011, the Government filed its Response to Defendant's Objection to Magistrate's Report and Recommendations [Doc. 40]. Upon independent review and for the reasons delineated herein, the Report and Recommendation is adopted.

**I. STANDARD OF REVIEW**

The Court reviews de novo the objected-to portions of the Report and Recommendation ("R & R"). 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

## II. FACTUAL BACKGROUND

The factual background contained in Magistrate Judge Guerin's R & R is uncontested.[1] As such, it is adopted by reference herein.

## III. ANALYSIS

Defendant objects to the Magistrate Judge's R & R on several grounds. First, she asserts that the "testimony and evidence show that: (1) the stop was illegal because she did not violate any traffic law." Def.'s Obj. to Magistrate's R & R [Doc. 39] at 2. Second, Defendant asserts that "the officers did not have reasonable suspicion to conduct a stop for drugs." *Id.* Lastly, Defendant avers that "she never gave consent to either officer to search the truck." *Id.* As such, Defendant urges that the evidence must be suppressed because "it was obtained in violation of the Fourth Amendment." *Id.*

### A. *Traffic Stop Based Upon Excessive Smoke*

Defendant asserts that Chief Billy Cloud did not have reasonable suspicion to stop her vehicle for violating an Arizona statute prohibiting the use of vehicles that emit excessive smoke. Def.'s Obj. to R & R [Doc. 39] at 3. Defendant argues that because the Government did not present testimony that her vehicle was emitting excessive smoke for ten consecutive seconds, the Magistrate Judge's finding of reasonable suspicion was erroneous. *Id.* "[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). The Government satisfies its "burden of production by coming forward with 'specific and articulable facts,'

---

[1] Defendant contests Magistrate Judge Guerin's analysis of the testimony presented during the evidentiary hearing on this matter. The Court will review these findings below; however, they do not change the factual background as described by the Magistrate Judge.

*Terry* [*v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] to support [an officer's] suspicion of illegal activity." *United States v. Willis*, 431 F.3d 709, 715 n.5 (9th Cir. 2005). Defendant has the burden of proof on a motion to suppress, and as such must "introduce contrary evidence or get the officer to retract his testimony on cross-examination." *Id.*

Section 28-955, Arizona Revised Statutes, provides:

A. A motor vehicle shall be equipped at all times with a muffler that is in good working order and that is in constant operation to prevent excessive or unusual noise.

B. A person shall not use a muffler cutout, bypass or similar device on a motor vehicle on a highway.

C. The engine and power mechanism of a motor vehicle shall be equipped and adjusted to prevent the escape of excessive fumes or smoke.

D. Beginning with motor vehicles and motor vehicle engines of the 1968 model year, motor vehicles and motor vehicle engines shall be equipped with emissions control devices that meet the standards established by the director of environmental quality.

E. A person who violates this section is subject to a civil penalty of at least one hundred dollars.

F. This section does not apply to an electrically powered motor vehicle.

A.R.S. § 28-955. Section R18-2-1030, Arizona Administrative Code, provides:

A. A vehicle other than a diesel-powered vehicle or 2-stroke vehicle that emits any visible emissions for 10 consecutive seconds or more is "excessive" for the purposes of A.R.S. § 28-955(C).

B. A diesel-powered vehicle shall not emit any visible emissions in excess of:

1. Twenty percent visual opacity for 10 consecutive seconds or more at or below 2,000 feet elevation;

2. Thirty percent visual opacity for 10 consecutive seconds or more above 2,000 feet and at or below 4,000 feet elevation; and

3. Forty percent visual opacity for 10 consecutive seconds above 4,000 feet elevation.

C. A vehicle that exceeds the standards in subsection (B) fails the inspection under R18-2-1006 and is considered to have "excessive" emissions under A.R.S. § 28-955(C).

A.A.C. § R 18-2-1030.

Chief Cloud testified that "[t]he vehicle was being operated at – well, 55 miles an hour, which is below the speed limit, and it was being operated within the lane of travel. But there was an excessive amount of smoke coming around on the driver's side of the vehicle up over the horse trailer." Hr'g Tr. 4/11/11 [Doc. 30] at 18:12-16. When asked how he knew it was an excessive amount of smoke, Chief Cloud stated, "I – well, it was just a thick black smoke and it was consistent. And it – and it – so I didn't know if the vehicle, obviously I wasn't in the vehicle with her, but I didn't know if it was constantly being accelerated or if it was smoking excessively while basically in coast mode is the best way to describe it. But it was a consistent black smoke." *Id.* at 18:20-25. Chief Cloud went on to testify that he followed the vehicle and was able to observe this black smoke for approximately three (3) miles, or a little over three (3) minutes. *Id.* at 19:7-13. Chief Cloud further testified that the weather conditions were "clear." *Id.* at 45:17-23. Further, on redirect, Chief Cloud again testified that he observed the smoke emitted from Defendant's vehicle for longer than ten (10) seconds. *Id.* at 55:12-17.

Additionally, Agent Frank Acevedo testified that "[w]hen [the truck] initially left Patagonia, I – I could observe the – the dark, black cloud of smoke that was coming out of the muffler." Hr'g Tr. 4/11/11 [Doc. 30] 65:8-10. Agent Acevedo also testified that he was "pulling up the rear trying to catch due to that I had to talk to another agent on the phone and there's limited cell phone coverage, so I had to find a location where I could get cell phone coverage, and I was trying to relay to the other agents that were coming from Nogales. After I finished the phone call I proceeded to catch up to – to Bill Cloud and the – the target vehicle." *Id.* 64: 17-25.

At the hearing, Defendant's investigator Anabel Santa Maria testified regarding video of the truck that she had taken some time after the incident while it was running. Hr'g Tr. 4/11/11 [Doc. 30] 103:2-22. Ms. Santa Maria testified that she did not know whether the engine being hot or cold would make a difference regarding the amount of exhaust produced. *Id.* at 109:25-110:15. She further conceded that it was unknown whether the video depicted

what Chief Cloud witnessed on the day of the incident. *Id.* Finally, Ms. Santa Maria testified that she had no knowledge of the use of filters in videography.[2] *Id.* 111:12-112:12.

As the foregoing review demonstrates, the Government met its burden to demonstrate "specific, articulable facts" sufficient to support a finding of reasonable suspicion of Defendant committing a traffic violation. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Chief Cloud testified to seeing dark smoke coming from Defendant's vehicle for more than ten (10) seconds. Chief Cloud believed Defendant to be in violation of A.R.S. § 28-955, and accordingly effectuated a traffic stop. Agent Acevedo corroborated this testimony. Defendant did not meet her burden of proof to refute Chief Cloud and Agent Acevedo's testimony. Defendant did not make either law enforcement officer retract his statement, and the testimony of an investigator with no special training in videography or knowledge regarding vehicles is insufficient to undermine the finding of reasonable suspicion.

### B.     *Reasonable Suspicion Regarding Drug Trafficking*

Defendant argues that Magistrate Judge Guerin erred in finding an additional basis for a finding of reasonable suspicion to support the stop. Def.'s Obj. to R & R [Doc. 39] at 6. Defendant further objects to the Magistrate Judge's finding that she was not entitled to find out the identity of the informant's identity. *Id.* at 7. The Court agrees with Magistrate Judge Guerin's analysis.

#### 1. Identity of Informant

Defendant urges that she is entitled to discover the identity of the informant under *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1959). The Court finds that the Magistrate Judge's determination that the Government need not disclose the identity of its informant was correct. "What is usually referred to as the informer's privilege is in

---

[2] Indeed Defense counsel's objection indicates that Ms. Santa Maria does not have any expert knowledge regarding videography. Hr'g Tr. 4/11/11 [Doc. 30] 111:17-8.

1  reality the Government's privilege to withhold from disclosure the identity of persons who
2  furnish information of violations of law to officers charged with enforcement of that law."
3  *Rovario*, 353 U.S. at 59, 77 S.Ct. at 627 (citations omitted). "The purpose of the privilege
4  is the furtherance and protection of the public interest in effective law enforcement." *Id.*
5  Furthermore, the purpose "is to maintain the Government's channels of communication by
6  shielding the identity of an informer from those who would have cause to resent his
7  conduct." *Id.* at 60 n. 7, 77 S.Ct. at 627 n. 7. "Where the disclosure of an informer's
8  identity, or of the contents of his communication, is relevant and helpful to the defense of an
9  accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.*
10 at 60-1, 77 S.Ct. at 628. Ultimately, the Court must employ a balancing test weighing "the
11 public interest in protecting the flow of information against the individual's right to prepare
12 his defense." *Id.* at 62, 77 S.Ct. at 629.

13 Here, Defendant has not met her burden to demonstrate that the identity of the
14 informant is relevant and helpful to the defense or essential to a fair determination of the
15 cause. Unlike the informant in *Rovario*, the informant was not the sole participant in the
16 crime other than the accused. There is nothing about the identity of this informant that is
17 essential to a fair determination of this cause of action. Agent Acevedo testified that the
18 informant was someone that he knew, but who is not a current informant for a government
19 agency. Hr'g Tr. 4/11/11 [Doc. 30] at 61:17-22. Agent Acevedo further testified that the
20 informant did not have any criminal convictions, had not lied in the past, and was not
21 receiving any payment by the Government. *Id.* at 61:23-62:6. Defendant has not articulated
22 any reason how knowing the identity of the informer is necessary to her defense. "Where
23 a defendant 'has failed to articulate any substantial reason' why [s]he should be entitled to
24 the confidential information, disclosure is not appropriate." *United States v. Rowland*, 464
25 F.3d 899, 909 (9th Cir. 2006) (citations omitted). As such, the balance weighs in favor of
26 the public interest in protecting the flow of information. The Government need not reveal
27 the informant's identity.
28 . . .

2. Reasonable Suspicion

Defendant asserts that the informant's tip was insufficient to support a finding of reasonable suspicion. Def.'s Obj. to R & R [Doc. 39] at 7. As Magistrate Judge Guerin correctly stated, "[a]n informant's tip can provide a basis for a finding of reasonable suspicion if the tip is reliable." R & R [Doc. 33] at 9 (citing *United States v. Rowland*, 464 F.3d 899, 907-08 (9th Cir. 2006)). In determining the reliability of an informant's tip, courts employ a totality-of-the-circumstances approach and consider several factors, including: (1) whether the informant is a known informer or an anonymous informant; (2) whether the informant has a proven track record of reliability; (3) whether the informant revealed how he or she came to know the information; and (4) whether the tip provides detailed predictive information about future events that is corroborated by police observation. *Rowland*, 464 F.3d at 907-08.

Here, Agent Acevedo testified that the informant was someone that he knew, but who is not a current informant for a government agency. Hr'g Tr. 4/11/11 [Doc. 30] at 61:17-22. "[A] known informant's tip is thought to be more reliable than an anonymous informant's tip." *Rowland*, 464 F.3d at 907. Agent Acevedo also testified that the informant did not have any criminal convictions, had not lied in the past, and was not receiving any payment by the Government. Hr'g Tr. 4/11/11 [Doc. 30] at 61:23-62:6. "[A]n informant with a proven track record of reliability is considered more reliable than an unproven informant." *Rowland*, 464 F.3d at 908. There is no evidence before the Court about how the informant came to know about the information. Finally, the informant told Agent Acevedo, "that a blue, Ford pickup truck, extra cab with a – pulling a white horse trailer would be transporting drugs east on State Route 82 from Nogales towards the area of Patagonia, Sonoita area." Hr'g Tr. 4/11/11 [Doc. 30] at 61:11-16. Agent Acevedo traveled State Route 82 and found the blue, Ford, extra cab pickup truck, pulling a white horse trailer, traveling eastbound from Nogales toward Patagonia. Additionally, Agent Acevedo testified that the State Route 82 corridor is one in which narcotics smuggling is frequent. *Id.* at 63:7-12. Based upon the totality of the circumstances, the Court finds that Agent Acevedo had the requisite reasonable suspicion to

institute a *Terry* type stop. Additionally, once Defendant was stopped and Agent Acevedo questioned regarding her destination, Defendant changed her story when Agent Acevedo pointed out inconsistencies. *See* Hr'g Tr. 4/11/11 67:10-70:16.

### C. *Consent to Search*

Defendant relies on the Patagonia Police Department Warning/Equipment Repair Order issued by Chief Cloud to Defendant to demonstrate that she was in custody and therefore did not give her consent to the search of her vehicle. Def.'s Obj. to R & R [Doc. 39] at 11. At the hearing Chief Cloud testified that he obtained Defendant's oral consent to search her vehicle. Hr'g Tr. 4/11/11 25:6-26:8. Agent Acevedo also testified that first Chief Cloud obtained Defendant's consent, then he asked for and received her consent. *Id.* 67:11-71:4. Agent Acevedo's report also reflects this chain of events. *See* Def.'s Exh. 101. It is well settled law "that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973). The evidence before this Court demonstrates that Defendant consented to both officers regarding the search of her vehicle. As such, the search of Defendant's vehicle was proper.

Accordingly, after an independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

1. The Report and Recommendation [Doc. 33] is ADOPTED;
2. Defendant Sandoval's Motion to Suppress [Doc. 17] is DENIED; and
3. The Clerk of the Court is directed to return all exhibits to counsel.

DATED this 3rd day of August, 2011.

_____
Cindy K. Jorgenson
United States District Judge